```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      COLUMBUS DIVISION
```

| | |
|---|---|
| ARTHUR FERGUSON,           * | |
|       Plaintiff,           * | |
| vs.                        * | |
|                              | CASE NO. 4:03-CV-152(CDL) |
| AMERICAN PROTEINS, INC.    * | |
|       Defendant            * | |

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment. For the reasons set forth below, Defendant's motion is granted in part and denied in part. Defendant's Motion to Strike portions of Plaintiff's affidavit is also before the Court. The Court did not rely upon any evidence in the affidavit that is not admissible, and the Motion to Strike is denied as moot.

## FACTUAL BACKGROUND

Defendant operates a rendering plant in Cuthbert, Georgia, where by-products of the poultry industry are processed into protein meal to be used in the manufacture of animal feeds. At all times relevant to this action, Brandon Kyzar was the general manager of Defendant's rendering plant, and Jimmy Rice was the human resources manager.

Plaintiff, a black man, was hired to work in the production department of Defendant's rendering plant on March 28, 1995. He soon transferred from his production job to the maintenance department, which was responsible for corrective and preventive maintenance at the plant. In the maintenance department, there were three different categories of hourly employees: A, B, and C mechanics. The

C mechanics were the least skilled, and the A mechanics were the most skilled. The A mechanics provided guidance and direction to both the B and C mechanics, and the B mechanics provided guidance and direction to the C mechanics. None of the hourly mechanics had the power to fire, promote, or discipline the other hourly mechanics. Plaintiff worked his way up from C mechanic to B mechanic and was ultimately promoted, along with three other maintenance workers, two of whom were white and one of whom was black, to a new "lead man/management trainee" position on May 16, 2000. The position was created to enable promising maintenance workers to develop their supervisory skills so that they could, in time, take on a supervisory role in the plant. The lead man/management trainees were paid on an hourly basis and reported to the shift manager, who was responsible for supervising both production and maintenance employees.

During the summer of 2002, Kyzar determined that he needed a maintenance manager to manage the maintenance employees, rather than having the shift managers manage both the production and maintenance employees. He also determined that he needed salaried supervisors, reporting to the maintenance manager, to supervise the hourly maintenance workers. He selected Ed Hill, a white man who had been a project manager, to be maintenance manager. Hill brought two members of his project crew, Stanley Wills and Larry Walker (both white men), to supervise the hourly maintenance employees. Under this new structure, Plaintiff reported to the salaried supervisors. Shortly after Hill came on board, Plaintiff began to feel that he was being treated less favorably than the white maintenance employees in

2

terms of the job assignments he received and the way Hill interacted with him—and he believed that the less favorable treatment was based on his race.  In late August, Plaintiff complained to Rice that he believed Hill was discriminating against him because he was black.

Sometime in September 2002, after Plaintiff made the complaint to Rice, Kyzar approached Plaintiff to discuss the issues with Hill.  According to Plaintiff, Kyzar tried to convince Plaintiff that Hill was a good guy, and he accused Plaintiff of "trying to stir stuff up."  Plaintiff then tried to call the 800 number Defendant had created to receive employee complaints but found that the number had been disconnected.  Plaintiff then called Fred Cespedes, a senior American Proteins official with whom Plaintiff had spoken on a prior occasion, and spoke to him regarding the issues with Hill.  After he spoke with Cespedes, Plaintiff got the impression that Kyzar did not appreciate that Plaintiff had gone over his head to call Cespedes.

In mid-November 2002, Plaintiff was told that the lead man/management trainee position was being eliminated and that he would be reassigned to the A mechanic position.  This reassignment resulted in a reduction in pay from $15.71 per hour to $13.58 per hour.  Lonnie Jackson, the only other remaining lead man/management trainee (the two white men in this position had left the company), was also reassigned to Class A mechanic and received a similar pay decrease. According to Defendant, the lead man/management trainee position was eliminated because it was no longer needed after the new salaried supervisor positions were added.

On November 4, 2002, Defendant hired Adam DeBolt, a white man, as an A mechanic at a rate of $15.14 per hour. Kyzar characterized DeBolt as an "hourly supervisor" doing "virtually the same" job as Ferguson had done. On November 25, 2002, Defendant promoted Dennis Gale, a white man, from A mechanic to "Supervisor Trainee," an hourly supervisor trainee position which Defendant characterizes as a "shift manager trainee" position with broader responsibility than the lead man/management trainee position, earning $15.00 per hour. And in the spring of 2003, Keith Peavy, a white man, was promoted from A mechanic to "Supervisor Trainee," an hourly supervisor trainee position earning $15.08 per hour. According to Kyzar, the trainee position which Plaintiff had held and the trainee position which Peavy held were the same, and Kyzar did not know which employee was better or worse.

In September 2003, Plaintiff slipped and fell at the plant, injuring his back and neck. His doctor placed him on leave. On December 9, 2003, Rice wrote to Plaintiff to advise him that his Family and Medical Leave Act (FMLA) leave had expired but that the leave would be extended to December 19, 2003 because Plaintiff had a doctor's appointment on December 17, 2003. Plaintiff's doctor cleared him for work. Plaintiff did not return to work after his FMLA leave expired on December 19. Plaintiff claims that his first scheduled day of work was December 21, although Defendant argues that the schedule was not set. On December 21, 2003, Plaintiff called in sick, saying that his back hurt. Under Defendant's employment policy, employees who fail to return from leave on the date specified will be terminated following the third day of unexcused absence. Plaintiff did not

4

report to work or call in after December 21. On December 24, 2003, Rice wrote a letter to Plaintiff, stating that his employment was terminated effective December 21 because Plaintiff had failed to return to work after his leave expired.

Plaintiff claims that Defendant violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by (1) subjecting him to racial harassment, (2) demoting him from the lead man/management trainee position, (3) failing to promote him to supervisor trainee, (4) paying him less than white employees doing the same job, and (5) terminating him.

## DISCUSSION

*1. Summary Judgment Standard*

Summary judgment may be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A court may grant summary judgment only if the evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

*2.* McDonnell Douglas *Framework*

In this case, Plaintiff has not offered direct evidence to prove his discrimination claims—he relies solely upon circumstantial evidence, so his claims must be analyzed under the analytical

framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1331 (11th Cir. 1998).[1]  Under this framework, Plaintiff must establish a prima facie case of discrimination, which is a rebuttable presumption that Defendant unlawfully discriminated against him. *See McDonnell Douglas*, 411 U.S. at 802; *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc).  If Plaintiff establishes a prima facie case, the burden shifts to Defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment actions.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)*; Chapman*, 229 F.3d at 1024.  If Defendant meets this burden of production, the presumption raised by Plaintiff's prima facie case is rebutted, and to avoid summary judgment Plaintiff must come forward with evidence sufficient to create a genuine issue of material fact regarding whether Defendant's articulated reason is pretext for discrimination. *See Burdine*, 450 U.S. at 255-256*; Chapman*, 229 F.3d at 1024, 1037; *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)("In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.").

---

[1] Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998); *see also Cooper v. Southern Co.*, 390 F.3d 695, 724 n.16 (11th Cir. 2004).

*a. Racial Harassment Claim*

To establish a prima facie case for racial harassment, Plaintiff must show that (1) he was a member of a protected class, (2) he was subjected to harassment, (3) the harassment was based on race, and (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.  *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (sexual harassment case).

The Court finds, and Plaintiff's counsel concedes, that Plaintiff has not presented sufficient evidence to prove severe or pervasive racial harassment.  Accordingly, Defendant's Motion for Summary Judgment is granted as to Plaintiff's harassment claim.

*b. Demotion, Failure to Promote, and Discriminatory Pay Claims*

Plaintiff's demotion, failure to promote, and discriminatory pay claims are variations on a theme of the same basic claim:  Plaintiff argues that Defendant did not permit him to retain the job he had, obtain a job which was equivalent to the job he had held, or make as much money as white employees who did the same job as him—all because of his race and/or in retaliation for his complaints about racial discrimination in the plant.  Viewing the evidence in the light most

7

favorable to Plaintiff, the Court finds that Plaintiff has established a prima facie case of racial discrimination[2] and retaliation.[3]

Defendant has articulated several nondiscriminatory reasons for its decision, including the assertions that it eliminated the position which Plaintiff occupied for legitimate business reasons and that Plaintiff was not qualified for the positions to which he was not promoted.  However, the Court finds that the evidence viewed in the light most favorable to Plaintiff would permit a reasonable jury to find that Defendant's proffered reasons are pretext for discrimination.  Therefore, Defendant's Motion for Summary Judgment is denied as to Plaintiff's demotion, failure to promote, and discriminatory pay claims.

*c. Termination Claims*

Plaintiff claims that he was terminated because of his race and/or in retaliation for his protected conduct of complaining about the way Hill treated him.  Defendant argues that even if Plaintiff has made out a prima facie case for discriminatory or retaliatory termination, Plaintiff has failed to present sufficient evidence to rebut Defendant's legitimate nondiscriminatory reason for terminating Plaintiff:  Plaintiff never returned to work after his FMLA leave

---

[2] Plaintiff was (1) a member of a protected class, (2) qualified for the position, (3) subjected to an adverse employment action, and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class.  *See Kelliher v. Veneman*, 313 F.3d 1270, 1276 (11th Cir. 2002).

[3] (1) Plaintiff engaged in protected activity, (2) Plaintiff suffered adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  *See Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir. 1999).

8

expired.  The Court agrees with Defendant and finds that even if Plaintiff established a prima facie case of discriminatory or retaliatory termination—which is highly doubtful—he has not presented sufficient evidence to create a genuine issue of material fact regarding whether Defendant's articulated reason is pretext for discrimination.  Therefore, Defendant is entitled to summary judgment on Plaintiff's termination claims.

## CONCLUSION

The Court grants Defendant's Motion for Summary Judgment as to Plaintiff's harassment and termination claims.  The Court denies Defendant's Motion for Summary Judgment as to Plaintiff's demotion, failure to promote, and discriminatory pay claims.  The Court denies Defendant's Motion to Strike as moot.

IT IS SO ORDERED, this 20th day of July, 2005.

S/Clay D. Land
CLAY D. LAND
UNITED STATES DISTRICT JUDGE